Aurea APONTE, Plaintiff-Appellant,

v.

SECRETARY, DEPARTMENT OF HEALTH AND HUMAN SERVICES OF the UNITED STATES, Defendant-Appellee.

No. 608, Docket 83–6278.

United States Court of Appeals, Second Circuit.

Submitted Jan. 20, 1984.

Decided Feb. 23, 1984.

---

Wendy Brill, New York City, for plaintiff-appellant.

Raymond J. Dearie, U.S. Atty., Brooklyn, N.Y. (Miles R. Tepper, Beryl R. Jones, Asst. U.S. Attys.) for defendant-appellant.

Before FEINBERG, Chief Judge, and VAN GRAAFEILAND and KEARSE, Circuit Judges.

KEARSE, Circuit Judge:

Plaintiff Aurea Aponte appeals from a judgment of the United States District Court for the Eastern District of New York, Thomas C. Platt, *Judge,* dismissing her complaint for review of the denial by defendant Secretary of Health and Human Services ("Secretary") of Aponte's application for disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 401 *et seq.* (1976 & Supp. V 1981). On appeal, Aponte contends that the Secretary gave insufficient weight to (1) the uncontradicted evidence that Aponte suffered from a disabling mental impairment, (2) Aponte's subjective complaints of pain, and (3) the views of Aponte's treating physicians. Although we conclude that the district court properly upheld the Secretary's determination that Aponte was not physically disabled, we reverse and remand to the Secretary because we are unable to fathom the Secretary's rationale for concluding that Aponte was not disabled by reason of a mental impairment.

## I. BACKGROUND

Aponte applied for disability benefits in 1981, claiming that, due to "high blood pressure & chronic arthritis," she had become unable to work as of July 15, 1979. The Social Security Administration denied her application, and rejected her request for reconsideration. Aponte then requested and received a hearing before an administrative law judge ("ALJ").

The record before the ALJ consisted of the testimony of Aponte and her daughter-in-law, and the medical reports of several physicians. Aponte, who had been employed as a sewing machine operator until July 1979, testified to a variety of physical and mental symptoms. Her physical symptoms included pain in her knees, feet, back, hands, and neck. She testified that she was chronically exhausted; had lost twenty pounds due to a loss of appetite; and suffered from high blood pressure, dizziness, shortness of breath, and chest pains. Aponte testified that her condition had curtailed her daily activity. Her pain rendered her unable to walk for more than a few blocks, and she could no longer perform ordinary housework, including the use of her home sewing machine. Her only outside activity was to attend church twice a week, which she was able to do only because the pastor drove her to and from the church.

Aponte's mental symptoms included depression, weeping, and thoughts of suicide.

She wept at one point during the hearing. The medication prescribed for and taken by Aponte included Indocin, Butazolidin, Motrin, Aldoril, Deprol, and Triavil.[1]

Aponte's daughter-in-law testified that she did all of Aponte's general cleaning, dishwashing, mopping, and laundry, and helped Aponte to dress and comb her hair. The daughter-in-law stated that although Aponte sometimes did some light cooking for herself and her husband, the daughter-in-law did most of the cooking. The daughter-in-law testified that Aponte constantly complained of pain and exhaustion, frequently wept, and sometimes talked of suicide.

The medical evidence relating to Aponte's physical symptoms included the reports of Drs. Paolo Ottolenghi, and Jorge Rivera-Fernandez, who were Aponte's treating physicians, and Drs. Harry Jackson and Barry Fisher, who examined Aponte on behalf of the Secretary. Dr. Ottolenghi diagnosed Aponte's condition as hypertension and progressive arthritis of the knees, elbows, and lower spine. He opined that she was totally disabled. Dr. Fernandez diagnosed arthritic pain in the lower back and both legs, loss of strength in the hands, and hypertension. He indicated that these conditions were not improving in response to treatment. Dr. Jackson diagnosed hypertension, inflammation of the cartillage around the ribs, osteoarthritis of the lower spine, and inflammation of the left elbow. He estimated that Aponte had the residual functional capability to sit for up to four hours, stand and walk for two out of eight hours, lift up to twenty pounds, and use both hands for repetitive tasks. Dr. Fisher's report indicated that, although Aponte suffered from mild osteoarthritis, the movement of her limbs was not restricted and she remained capable of sitting and standing for up to six hours out of eight, and

walking up to four hours out of eight. He also found that she could use her hands for "fine manipulation."

Medical evidence relating to Aponte's mental condition appeared in the reports of Dr. Francisco Pereda, who was Aponte's treating psychiatrist, and Drs. Louis Locuratolo and Andreas Neophytides, a psychiatrist and a neurologist, respectively, who examined her on behalf of the Secretary. In a report dated October 2, 1981, Dr. Pereda described Aponte as very depressed and nervous, extremely tense and irritable, and suffering from "an acute depression," and diagnosed her condition as "Acute Depressive Neurosis." His report stated that

> [t]his patient has suicidal ideas and plan [sic] to jump out of a window, she has desire of going out and run away, has feeling of burning in her skull and all over her head. She is unable to remember what she read, with lost [sic] of concentration and lost [sic] of recent memory, with good remote memory. This patient has an acute depression episode since July 79, and in my opinion, she is in need of further psychiatric care and treatment.

He concluded that Aponte would be "unable to work for at least the next 2 years, due to her nervios [sic] condition. Her depression is so severe that she is unable to work even in a sedentary, light or low stress. [sic]"

Dr. Locuratolo, the psychiatrist who examined Aponte on behalf of the Secretary, reported that he had observed no disorientation, hallucinations or persecutory ideas. Nonetheless, he described her as weeping occasionally, sad, and tense, and he diagnosed her condition as an "*adjustment disorder with mixed emotional features,* (depression and anxiety)." (Emphasis in original.) He recommended psychotherapy, medications (minor tranquilizers and antidepressants), and vocational rehabilitation.

1. According to *The Physician's Desk Reference* (35th ed. 1981), Butazolodin, Indocin, and Motrin are anti-inflammatory agents indicated for treating arthritis. *Id.,* at 903, 1211, 1831. Aldoril is indicated for the treatment of hypertension. *See id.* at 1161. Deprol is a tranquilizer and antidepressant. *See id.* at 1857. Triavil is recommended for "patients with *moderate to severe anxiety and/or agitation and depressed mood,* (2) patients with *depression in whom anxiety and/or agitation are severe,* and (3) patients with *depression and anxiety in association with chronic physical disease.*" *See id.* at 1234. (italics in original).

Dr. Neophytides reported that he found no evidence of neurological disease, but he described Aponte as "a depressed appearing lady ... tearing during the interview, in moderate psychic distress." His report noted that Aponte had lost twenty pounds and that she had "frequent suicidal ideas which have included planning to kill herself through defenestration." His diagnostic impression was "Depressive psychosis."

The ALJ denied Aponte's claim for disability benefits. After describing Aponte's background and the evidence before him, the ALJ stated the following findings and conclusions as to Aponte's condition:

4. The claimant's medically determinable impairments, as shown by substantial medical evidence, are hypertension, costochondritis, osteoarthritis of the lumbosacral spine, epicondylitis of the left olecranonon [sic] and a nervous condition.

5. Based upon the objective medical evidence and the entire record, she can sit, stand, walk, pull, push, lift and carry up to light weights, operate foot controls, reach above shoulder level, bend occasionally and handle objects.

6. The claimant is exertionally capable of performing light work.

7. The claimant has the physical capabilities to perform her past work as a sewing machine operator, which was light work.

8. The claimant's subjective complaints of severe pain and dizziness are not credible. She does not experience severe, debilitating or persistent subjective symptoms.

9. The claimant is not disabled under Title II of the Social Security Act.

ALJ's Decision dated June 3, 1983 ("Decision"), at 5.

Aponte's request for reconsideration was denied by the Social Security Administration's Appeals Council. She then initiated this action seeking judicial review pursuant to 42 U.S.C. § 405(g) (1976). The District Court found that substantial evidence supported the Secretary's denial of benefits and entered judgment for the Secretary.

## II. DISCUSSION

On appeal, Aponte presses three arguments. She urges that the ALJ (1) improperly denied her claim since the evidence of her mental impairment satisfies the Secretary's regulations defining a scheduled disability, (2) gave inadequate weight to her claims of subjective pain, and (3) improperly discounted the evidence given by her treating physicians. We see no merit in the second or third contention, but find that the first warrants a remand to the Secretary.

[1, 2] We begin with the physical symptoms and complaints of pain, which, on the present record, need not detain us long. "It is the function of the Secretary, not [the reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Secretary of Health and Human Services,* 705 F.2d 638, 642 (2d Cir.1982). If the Secretary's findings are supported by substantial evidence, 42 U.S.C. § 405(g) (1976); *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain. *McLaughlin v. Secretary of Health, Education and Welfare,* 612 F.2d 701, 704 (2d Cir.1982). Similarly, while the opinions of a treating physician deserve special respect, *see, e.g., Carroll v. Secretary of Health and Human Services, supra,* 705 F.2d at 642; *Parker v. Harris,* 626 F.2d 225, 232 (2d Cir.1980), genuine conflicts in the medical evidence are for the Secretary to resolve. *Richardson v. Perales, supra,* 402 U.S. 399, 91 S.Ct. at 1426.

 In the present case, there was substantial evidence in the record as a whole to support the Secretary's determination that Aponte was not disabled by reason of her physical impairments or pain. The reports of Drs. Jackson and Fisher indicated that the objective medical data did not support Aponte's claim of physical disability; and those physicians concluded that Aponte had substantial residual functional capability.

Their conclusion was to some degree supported also by the testimony of Aponte's daughter-in-law which suggested that Aponte could do light cooking. The ALJ chose to credit these data and conclusions and to discount Aponte's complaints of disabling pain. On the record as a whole, the ALJ's finding that Aponte was not disabled by reason of a physical impairment or pain must be upheld.

■ We are unable, however, to reach a similar conclusion with respect to the ALJ's rejection of Aponte's claim of a psychiatric impairment since we cannot determine the ALJ's basis for his rejection. The Secretary's regulations provide that a claimant will be found disabled within the meaning of the Act if she has a physical or mental impairment listed in 20 C.F.R. Subpart P, Appendix I of the regulations. *See* 20 C.F.R. § 404.1520(d) (1983). Appendix I's list of disabling disorders is, in pertinent part, as follows:

12.04 *Functional nonpsychotic disorders* (psychophysiologic, neurotic, and personality disorders, addictive dependence on alcohol or drugs). With both A and B:

A. Manifested persistence of one or more of the following clinical signs:

· · · · ·

2. Recurrent and persistent periods of anxiety, with tension, apprehension, and interference with concentration and memory; or

3. Persistent depressive affect with insomnia, loss of weight, and suicidal preoccupation; ...

· · · · ·

B. Resulting persistence of marked restriction of daily activities and constriction of interests and deterioration in personal habits and seriously impaired ability to relate to other people.

**2.** *See* note 1, *supra,* and accompanying text.

**3.** The ALJ noted in his finding numbered "4" that Aponte's "medically determinable impairments" included "a nervous condition." We do not view this as referring to the claimed psychiatric condition; but if it was so intended, it merely creates further question as to the basis

20 C.F.R. ch. III, app. I, § 12.04 (italics in original).

There was ample evidence in the record to suggest that at least part A of § 12.04 was met. There was support, for example, in the testimony of Aponte and her daughter-in-law, in the reports of Drs. Pereda, Locuratolo, and Neophytides, and in the treatment prescribed for Aponte,[2] for a conclusion that Aponte suffered from recurrent and persistent anxiety, tension, and preoccupation with suicide. Indeed, in this Court the Secretary appears to concede that Aponte met the requirements of part A, since she argues that Aponte did not show "a '*marked* restriction of daily activities *and seriously impaired* ability to relate to other people.'" (Secretary's brief on appeal at 15 (emphasis therein), quoting § 12.04 part B.)

The Secretary's contention here is that Aponte's claim was properly rejected because Aponte did not meet the requirements of § 12.04 part *B*. We see no indication, however, that this was the rationale of the ALJ. His Decision, after discussing all of the evidence, set forth his findings and conclusions as to Aponte's condition, which we have quoted in full in part I above. His findings did not even mention Aponte's asserted psychiatric impairment.[3] Thus, whereas the ALJ expressly found that Aponte's claim of severe pain was not credible, he was silent as to whether or not he credited Aponte's testimony of anxiety, tension, loss of concentration, or preoccupation with suicide. Nor was there any finding as to his assessment of the other evidence that tended to show that Aponte met the criteria for disability set forth in § 12.04, or as to any factors he might have relied on to find that Aponte did not meet those criteria.

In circumstances such as these, where the ALJ has stated no findings or conclusions with respect to a claim of disabling impair-

for the rejection of that claim. The statement in finding "8" that Aponte does not experience disabling "subjective" symptoms appears to refer to the claims of pain and, in context, cannot be viewed as a determination of Aponte's psychiatric complaints.

ment, especially one as to which the claimant arguably has demonstrated the symptoms described in the Secretary's regulations, we cannot determine whether the ALJ's conclusion was based on a correct application of the law and whether there is substantial evidence in the record to support it. We therefore remand the matter to the Secretary for findings of fact and conclusions of law as to Aponte's claim of a psychiatric disability. *See Berry v. Schweiker,* 675 F.2d 464, 467–69 (2d Cir. 1982).

## CONCLUSION

The judgment of the district court is reversed and the matter is remanded to the Secretary for findings and conclusions with respect to Aponte's claim of psychiatric impairment, and, if her application is denied, for an explication of the basis for the decision.